

Kellie M. O'Hanlon
25443 Avenida Cappela
Valencia, CA 91355
661-877-1872
Plaintiff Pro Se

FILED
CLERK, U.S. DISTRICT COURT
SEP - 8 2015
CENTRAL DISTRICT OF CALIFORNIA
BY
DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kellie M. O'Hanlon<br>Plaintiff,<br><br>vs.<br><br>J.P. Morgan Chase N.A.<br>Defendant. | ) Case no. 2:15-cv-06640 DDP (JPRx)<br>)<br>)<br>)<br>) MEMORANDUM OF POINTS AND<br>) AUTHORITIES IN OPPOSITION TO<br>) MOTION TO COMPEL ARBITRATION<br>)<br>)<br>)<br>)<br>) Hearing Date: Monday, October 5,2015<br>) Time: 10:00am<br>) Judge: Dean D. Pregerson<br>) Magistrate Judge: Jean P. Rosenbluth<br>) Courtroom:3 |

1

*O'Hanlon vs. J.P. Morgan Chase*
Motion in Opposition to Motion to Compel Arbitration

## I. INTRODUCTION

Plaintiff respectfully submits this Opposition to Defendant's Motion to Compel Arbitration and to stay litigation.

## II. FACTUAL BACKGROUND

Plaintiff, Kellie M. O'Hanlon, was offered a job at Washington Mutual on 04/26/2007. Plaintiff signed the job offer letter (Exhibit A) on 05/04/2007. Plaintiff received the job offer letter in the mail on 05/04/2007 and was alarmed because it stated it was due by 05/03/2007. Plaintiff signed immediately and returned, as she was aware it would affect her start date of 05/07/07. Plaintiff does not recall a copy of the Washington Mutual Binding Arbitration Agreement (Exhibit B) being included in the job offer letter. The Washington Mutual Binding Arbitration Agreement was signed by the Plaintiff when presented to her during new hire training on her 05/07/2007, her first day of work. No copy was provided for her records at that time. Failure to provide a copy of the arbitration rules to which the employee will be bound supports a finding of procedural unconscionability. (O'Hare v. Municipal Resource Consultants (2003) 107 Cal. App.4th 267, Harper v. Ultimo (2003) 113 Cal.App.4th 1402; Fitz v. NCR Corp., supra1118

Cal.App.4th 702; Trivedi v. Curexo Technology Corp., supra 189 Cal.App. 4th 387) Plaintiff was given numerous documents to sign throughout the day during new hire training and not enough time was allocated during the day to read through all the documents with as much detail as they required. The Washington Mutual Binding Arbitration Agreement states that the employee agrees to arbitrate all disputes related to employment with Washington Mutual, or it's successor. JP Morgan Chase acquired Washington Mutual's assets in 2008. Kellie O'Hanlon became an employee of JP Morgan Chase NA., her employment was terminated by JP Morgan Chase NA. on 08/05/2014, after receiving notice she would be laid off with an effective last day of 09/17/14. Plaintiff filed a wrongful termination complaint against JP Morgan Chase NA. on 07/29/2015. Plaintiff was terminated for disputing the balance on her JP Morgan Chase credit card. Plaintiff disputed the balance of her JP Morgan Chase credit card, formally a Washington Mutual employee credit card, because of a dramatic interest rate increase that occurred without the 45 day notice required pursuant to the Obama Credit Card Act issued in 2009.

III. Meet and Confer

Before filing a motion, the moving party must call the opposing party to discuss and try to resolve the issue that has caused the moving party to consider filing a motion. For motions with deadlines, such as this one, the moving party must meet and confer with the opposing party at least 5 days before filing the motion. The moving party sent a Meet and Confer letter to which the Plaintiff responded she was prepared to meet and confer at any time, but they never attempted to meet and confer.

On 08/27/15 at 3:45pm, it was brought to the Plaintiff's attention via voicemail and email that opposing counsel would like to proceed to arbitration. The email stated: "Of course, if you have any questions or would like to further discuss this matter, I will make myself available to you anytime today or tonight. " This was too short notice and a very small window of time for the Plaintiff to contact opposing counsel. Plaintiff did respond to opposing counsel by email that she was at an event with her children at their school, but that she does not agree to arbitration.

On Friday, August 28 2015 at 6:30pm, opposing counsel, Michelle Lee Flores, sent a Meet and Confer letter to the Plaintiff. Plaintiff responded to all items in the letter and emailed counsel on Sunday, August 30 2015 and

asked her to contact her to set up the date and time for a meeting. Plaintiff sent opposing counsel, Michelle Lee Flores, emails on 08/30/15, 08/31/15, 09/01/15, inquiring when we could set up a date and time to "Meet and Confer", (See Exhibit C). On 09/01/2015 at 4:27pm, Opposing counsel's responding email stated: "Yes, absolutely, I would like to continue to meet and confer and determine if we can resolve our differences and avoid a motion to the court. To this end, I trust you would be amendable to a short continuance to respond to the complaint in federal court." She also stated in the email, " I have unfortunately been occupied on another matter and this is my first opportunity to respond." Plaintiff replied on 09/01/15 that she refuses to agree to a continuance, and that she was free anytime to "Meet and Confer" and to let her know when opposing counsel was free to "Meet and Confer". After no response on 09/02/15, Opposing counsel responded by email on 09/03/15 stating "Since you refused the professional courtesy of a brief extension to have the luxury of more time to discuss the enforceability issues of your agreement to arbitrate your claims, my continued meet and confer below, unfortunately brief and to the point." She then continues to state in her email response "If you agree to a brief continuance of our deadline to file the motion to compel- which you know is

tomorrow, Friday, September 4, 2015- we can discuss it in whatever detail you would like. Without an agreement to a brief continuance, we are limited in time as we are preparing our papers to file." (Exhibit D)

In conclusion, Plaintiff was not given an opportunity to "Meet and Confer" with opposing counsel unless she agreed to a continuance. Opposing counsels inability to "Meet and Confer" was implied as an ultimatum of the Plaintiff granting a continuance. Exchanging emails and letters isn't enough to satisfy the meet-and-confer requirement. Additionally, the meet- and-confer requirements should occur with sufficient time before the deadline. This complaint was served to JP Morgan Chase NA. on 07/29/15 and Plaintiff received no contact from opposing counsel until 08/26/15. Opposing counsel requested a 14 day extension from Plaintiff on 08/26/15 to respond to the complaint, Plaintiff agreed. However, on 08/28 Opposing counsel filed to have the case moved to federal court. Opposing counsel then requested another extension on 09/01/15, Plaintiff did not feel it was warranted and opposed the extension. As a result of the lack of effort by opposing counsel to meet and confer, this motion should be dismissed.

## IV. ISSUE PRESENTED

Whether the Washington Mutual Arbitration Agreement signed 05/07/2007 by the Plaintiff is unconscionable and enforceable by JP Morgan Chase NA. under California State law.

## V. SUMMARY OF ARGUMENT

Defendant, JP. Morgan Chase. N.A., cannot enforce the terms and conditions of the Washington Mutual Arbitration Agreement because it is both procedurally and substantively unconscionable. The arbitration agreement was signed only by the Plaintiff, Kellie M. O'Hanlon, and had no signature line for the employer. Neither JP Morgan Chase N.A. nor Washington Mutual signed the arbitration agreement in question, therefore, it lacks mutuality, making it substantively unconscionable. Additionally, the Binding Arbitration Agreement raises another issue of mutuality because it excludes claims for injunctive relief favored by employers. (Trivedi v. Crexo (2010) 189 Cal.App.4th 387,397 [employer's reservation of access to court for injunctive relief was substantively unconscionable].)

It also does not require the employer to bear the burden of costs that are unique to arbitration.  When an employer imposes mandatory arbitration as a condition of employment, it must bear all costs that are unique to arbitration. (*Armendariz, supra,* 24 Cal.4th at p. 113.) Here, the agreement requires the "party initiating arbitration" to pay any filing fee, and only requires the employer to "advance any required administrative or arbitrator's fees." Per the Washington Mutual job offer letter signed 04/26/2007, the Plaintiff's employment was contingent upon the execution of the Washington Mutual Binding Agreement.  Plaintiff concludes that the agreement is procedurally unconscionable because it was presented on a take it or leave it basis and did not include a copy of the arbitration rules.   See Abeyrama v. JP Morgan Chase (Pl.'s Opp'n [Doc. # 12] at 6.) "[T]he critical factor in procedural unconscionability analysis is the manner in  which the contract or the disputed clause was presented and negotiated." Nagrampa v. Mailcoups, Inc., 469 F.3d 1257, 1282 (9th Cir. 2006). Courts have recognized that where an employment contract's arbitration clause is "cast in a 'take it or leave' light and presented as [a] standard non-negotiable provisio[n], the procedural element of unconscionability is satisfied." Ferguson v. Country-wide Credit Industries, Inc., 298 F.3d 778, 784 (9th Cir.  2002). Nonetheless, "[t]he take-

it-or-leave-it nature of [the agreement] is insufficient to render it unenforceable." Chalk v. T-Mobile USA, Inc., 560 F.3d 1087, 1094 (9th Cir. 2009). " A finding of procedural unconscionability also considers the factors of oppression and surprise due to unequal bargaining power. Ferguson, 298 F.3d at 783. A mandatory arbitration provision drafted by the employer and presented to the employee on a take it or leave it basis, is a contract of adhesion, and the circumstances of its execution may render it procedurally unconscionable. In Armendariz, the California Supreme Court stated that there was "little dispute" that the arbitration agreement at issue was procedurally unconscionable because "it was imposed on employees as a condition of employment and there was no opportunity to negotiate." Plaintiff did not negotiate the terms of the application or arbitration form, nor were the provisions explained to her. Plaintiff was not told that her signature on the form was optional, nor was she aware of the consequences of signing a binding arbitration agreement. Per the job offer letter (Exhibit A), on page 2 and paragraph number two, it states: " This offer of employment is contingent, in part, on the following conditions: Execution of Washington Mutual's Binding Arbitration Agreement and your agreement to resolve eligible job related concerns through Washington Mutual's

Dispute Resolution Process (DRP). Your manager will present you with your original Binding Arbitration Agreement for signature on your first day of work." (Page 2, Bullet 5). This indicates that signing was mandatory which makes it procedurally unconscionable. (Wisdom v Accent Care, Inc. (2012) 202 Cal.App.4th 591, review granted March 28,2012, S200128.) There was unequal bargaining power between the parties and no possibility to negotiate a meaningful choice by the job seeker (Plaintiff). (Wherry v. Award, Inc. (2011)192 Cal.App.4th.1242.) For the arbitration agreement to be procedurally conscionable, Defendant must show that the employee had a meaningful opportunity to opt out of the arbitration agreement while avoiding termination. See Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1172 (9th Cir. 2003).

On the Washington Mutual Binding Arbitration Agreement it was not distinguished in any manner that the agreement would be binding by any successor in interest to Washington Mutual. It is only mentioned once in the last 8 words of the 2nd page of the agreement, on the bottom of page 2, item number 21.

The Washington Mutual Arbitration Agreement limits discovery to one request for production and two depositions absent relief from the arbitrator

upon showing of "sufficient cause." Adequate discovery is essential for the vindication of the Plaintiff's claims against the defendant, JP Morgan Chase NA. The discovery limits imposed upon the Plaintiff constitute substantive unconscionability.

Also due to the size of JP Morgan Chase NA. and the nature of it's business, it is of the Plaintiff's opinion that large employers such as JP Morgan benefit by using "repeat players" in arbitration proceedings. Employing the same arbitrators over several years can become problematic because the employer often develops a "business" relationship rather than an adjudicatory one with the arbitrator that suggests bias.

## VI. CONCLUSION

For the reasons stated above, this Court should deny the motion to compel arbitration. Additionally, please reference Dixie Jara v. JP Morgan Chase Bank N.A., where the court and JP Morgan Chase both found the same Washington Mutual Binding Arbitration agreement to be unconscionable, stating: "The arbitration agreement here is one of adhesion. Further, there are serious limitations on the plaintiff's ability to conduct meaningful discovery on her claims. On the other hand, the employer has not expressly

# EXHIBIT A

WaMu

April 26, 2007

Kellie M. O'Hanlon
25718 N.Hogan Dr. Unit C10
Valencia, California 91355

246092

Dear Kellie,

Congratulations! On behalf of Washington Mutual ("Washington Mutual" or "the Company"), I am pleased to offer you the position of Default Customer Care Section Manager I. We expect that you will start on May 7, 2007 in our Chatsworth office. You will report directly to Patricia Friedberg. This letter outlines the terms of your new position.

**Compensation**
Your starting annual base salary will be $55,000.00.

At Washington Mutual we've made pay for performance the foundation of our compensation strategy. One of the ways that we reward top performers is through the bonus plan applicable to your position. Your initial annualized bonus target will be 12% of your salary. The bonus you actually receive will be based on your individual performance. There are two performance periods (January through June and July through December). For your first performance period, your bonus will be prorated based on your start date unless your start date falls within 30 calendar days of the end of the period. In that case, you will not receive a bonus for that performance period. Please note that Washington Mutual reserves the right to change the bonus plan at any time.

**Benefits**
We currently offer both a 401(k) plan ("WaMu Savings") and a cash balance pension plan ("WaMu Pension"). WaMu Savings allows you to save for retirement by contributing up to 75 percent of your eligible compensation (subject to IRS limitations) to the Plan on a pretax basis. You are eligible to join WaMu Savings as of your date of hire. Washington Mutual matches your pretax contributions to WaMu Savings effective the first day of the month after you have completed twelve months of service. The matching contribution is currently 100% on the first 3% of your eligible compensation that you contribute plus 50% on the next 2% of your eligible compensation that you contribute. You are immediately vested in your contributions, rollover contributions into the Plan, and company matching contributions. You are also automatically eligible for benefit accruals under the WaMu Pension as of the first day of the quarter following your one year anniversary. Washington Mutual reserves the right to amend or terminate these Plans at any time. If there is any discrepancy between the summary of benefits in this letter and the summary plan description, the latter will govern.

The Washington Mutual Flexible Benefit Program offers many choices, including medical and dental coverage, that allow you to create a benefits package tailored to your needs. Your flexible benefits are effective the first day of the month following your first 10 days of service with us. If you have any questions you may contact the employee service center at (866) 492-6847.

**Additional Provisions**
When you accept our offer, you will be employed on an at will basis, meaning that either you or the Company may terminate our relationship at any time for any reason, without cause or advance notice. No representations to the contrary are effective unless in writing and approved by the Board of Directors.

This offer of employment is contingent, in part, on the following conditions:

- The results of your background and reference check
- Acceptance for bonding
- Confirmation of your employment and education history
- Proof of your legal right to work for Washington Mutual in the United States
- Execution of Washington Mutual's Binding Arbitration Agreement (copy for your records enclosed) and your agreement to resolve eligible job related concerns through Washington Mutual's Dispute Resolution Process (DRP). Your manager will present you with your original Binding Arbitration Agreement for signature on your first day of work.

If you agree to the terms of this offer please indicate so by signing this letter. The signed original should be returned to Jennifer Sawyer at 7301 Baymeadows Way Jacksonville, Florida 32256 Mailstop JAXB1070 no later than May 3, 2007.

We have enjoyed getting to know you through the interview process and look forward to the opportunity to have you on our team. We hope that you will accept this offer and we look forward to a great future together. If you have any questions please do not hesitate to contact me at 904-486-5199.

Sincerely,
/s/

Ryan Schumacher
Senior Recruiter

**Acceptance**
I accept employment with Washington Mutual according to the terms set forth in this letter.

Kellie Offanlon
Signature

5/04/07
Date

# EXHIBIT B

**Washington Mutual**

# Binding Arbitration Agreement

Washington Mutual believes that, if a dispute related to your employment here arises, it is preferable for both you and the Company that it be resolved without resorting to litigation. As part of its Internal Dispute Resolution Program, which is available to all employees, the Company and its employees mutually agree that any disputes that cannot be resolved internally will go to binding arbitration, because it is a quicker and less disruptive process than litigation.

I, Kellie O'Hanlon, in consideration of my employment with Washington Mutual, Inc. or any of its affiliates or subsidiaries ("Washington Mutual") agree with Washington Mutual as follows:

1. Any and all disputes that involve or relate in any way to my employment (or termination of employment) with Washington Mutual shall be submitted to and resolved by final and binding arbitration.

2. Washington Mutual and I understand that by entering into this Agreement, each of us is waiving any right we may have to file a lawsuit or other civil action or proceeding relating to my employment with Washington Mutual, and waiving any right we may have to resolve employment disputes through trial by jury. We agree that arbitration shall be in lieu of any and all lawsuits or other civil legal proceedings relating to my employment.

3. This Agreement is intended to cover all civil claims that involve or relate in any way to my employment (or termination of employment) with Washington Mutual, including, but not limited to, claims of employment discrimination or harassment on the basis of race, sex, age, religion, color, national origin, sexual orientation, disability and veteran status (including, but not limited to, claims under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Fair Labor Standards Act, the Immigration Reform and Control Act, and any other local, state or federal law concerning employment or employment discrimination), claims for breach of any contract or covenant, tort claims, claims based on violation of public policy or statute, and claims against individuals or entities employed by, acting on behalf of, or affiliated with Washington Mutual. The only exceptions to this are

- Claims for benefits under a plan that is governed by ERISA,
- Claims for unemployment and workers compensation benefits,
- Claims for injunctive relief to enforce rights to trade secrets, or agreements not to compete or solicit customers or employees.

4. I understand and agree that, despite anything in this Agreement to the contrary, I am not waiving the right to file a complaint or charge with any government agency authorized to address employment-related matters, including the Equal Employment Opportunity Commission, the Department of Labor, the Occupational Safety and Health Commission, the National Labor Relations Board, the Immigration and Naturalization Service, and any other comparable local, state, or federal agency. I also understand and agree that, despite anything in this Agreement to the contrary, either party may request a court to issue such temporary or interim relief (including temporary restraining orders and preliminary injunctions) as may be appropriate, either before or after arbitration is commenced. The temporary or interim relief may remain in effect pending the outcome of arbitration. No such request shall be a waiver of the right to submit any dispute to arbitration.

5. Arbitration under this Agreement shall be conducted before a single arbitrator and shall take place within the state where I am currently employed by Washington Mutual, or where I was so employed at the time of termination.

6. In order to initiate arbitration, Washington Mutual or I must notify the other party in writing of the decision to initiate arbitration, either by personal delivery or certified mail. The statute of limitations otherwise applicable under law shall apply to the delivery of the notice of arbitration. The notice should include the following information about the employee: name, home address, work address, work and home phone numbers, and the following information about the claim(s): date, location, nature of the claims or dispute, facts upon which the claims are made, and remedy requested. Any notice of arbitration initiated by Washington Mutual shall be sent to my last known residence address as reflected in my personnel file at Washington Mutual. Notice of arbitration initiated by me shall be sent to Washington Mutual's Legal Department, attention Associate General Counsel - Litigation. The Legal Department's address is currently 1201 Third Avenue, WMT 1706, Seattle, Washington 98101.

7. Washington Mutual and I will attempt to agree upon a mutually acceptable arbitrator. If Washington Mutual and I are unable to agree upon an arbitrator, we will submit the dispute to the American Arbitration Association ("AAA"). If AAA is unable or unwilling to accept the matter, we will submit the matter to a comparable arbitration service. The arbitration shall be conducted in accordance with the laws of the state in which the arbitration is conducted and the rules and requirements of the arbitration service being utilized, to the extent that such rules and requirements do not conflict with the terms of this Agreement.

8. At the request of either Washington Mutual or myself, the arbitrator will schedule a pre-hearing conference to, among other things, agree on procedural matters, obtain stipulations, and attempt to narrow the issues. The arbitrator shall have authority to entertain a motion to dismiss and/or a motion for summary adjudication by any party.

*Continued on next page*



## Binding Arbitration, continued

9. Either party shall be entitled to conduct a limited amount of discovery prior to the arbitration hearing. Either party may make a request for production of documents from the other party. Either party may take a maximum of two (2) depositions. Either party may apply to the arbitrator for further discovery or to limit discovery. The arbitrator has the discretion to enter an appropriate order upon a showing of sufficient cause. If any documents requested or to be produced contain or refer to matters that are private, proprietary and/or confidential, the arbitrator shall make an appropriate protective order prohibiting or limiting use and disclosure of such documents and providing for return of documents produced after the arbitration is concluded.

10. During the arbitration process, Washington Mutual and I may each make a written demand on the other for a list of witnesses, including experts, to be called and/or copies of documents to be introduced at the hearing. The demand must be served at least forty-five (45) days prior to the hearing. The list and copies of documents must be delivered within fifteen (15) days of service of the demand.

11. Either party may file a pre-hearing brief with the arbitrator. Each brief must be served on the arbitrator and the other party at least five (5) working days prior to the hearing and, if not timely served, must be disregarded by the arbitrator. The brief shall specify the facts the party intends to prove, analyze the applicable law or policy, and specify the remedy sought. At the close of the hearing, each party shall be given leave to file a post-hearing brief. The time for filing the post-hearing brief shall be set by the arbitrator.

12. Each party, at its own expense, has the right to hire an attorney to represent it in the arbitration. All parties shall have the right to present evidence at the arbitration, through testimony and documents, and to cross-examine witnesses called by another party. Each party shall pay the fees of any witnesses testifying at its request, and pay the cost of any stenographic record of the arbitration hearing should it request such a record. The requesting party must notify the other of such arrangements at least two (2) working days before the hearing.

13. Any filing fee will be paid by the party initiating arbitration. To the extent such a fee exceeds the cost of filing a lawsuit in a court of that jurisdiction, Washington Mutual will reimburse the difference. Any postponement or cancellation fee imposed by the arbitration service will be paid by the party requesting the postponement or cancellation. During the time the arbitration proceedings are ongoing, Washington Mutual will advance any required administrative or arbitrator's fees. Each party will pay its own witness fees.

14. The arbitrator shall issue a written and signed statement of the basis of his or her decision, including findings of fact and conclusions of law. In making the decision and award, if any, the arbitrator shall apply applicable substantive law. The arbitrator may only award any remedy that would have been available in court. The decision and award, if any, shall be consistent with the terms of this Agreement and shall include an allocation of the costs of the arbitration proceeding between the parties.

15. Each party agrees to promptly pay any arbitration award against it at the conclusion of the arbitration. Washington Mutual and I agree that the decision of the arbitrator shall be final and binding on all parties and shall be the exclusive remedy of the parties.

16. This Agreement may be enforced by a court of competent jurisdiction through the filing of a petition to compel arbitration, or otherwise. The decision and award of the arbitrator may also be judicially enforced pursuant to applicable law.

17. Because of the interstate nature of Washington Mutual's business, this Agreement is governed by the Federal Arbitration Act, 9 U.S.C. §1 et seq. (the "FAA"). The provisions of the FAA (and to the extent not preempted by the FAA, the provisions of the law of the state of my principal place of employment with Washington Mutual that generally apply to commercial arbitration agreements, such as provisions granting stays of court actions pending arbitration) are incorporated into this Agreement to the extent not inconsistent with the other terms of this agreement.

18. I understand and agree that nothing in this agreement shall limit or modify the at-will nature of my employment relationship with Washington Mutual or require any particular action or procedures prior to termination of employment.

19. We agree that if any provision of this Agreement is found to be unenforceable to any extent or in violation of any statute, rule, regulation or common law, it will not affect the enforceability of the remaining provisions and the court shall enforce the affected provision and all remaining provisions to the fullest extent permitted by law.

20. This Agreement cannot be modified except by an amendment in writing, signed by both parties.

21. By presenting this Agreement to me, Washington Mutual agrees to be bound by its terms. By signing below, I agree to be bound by its terms. This Agreement shall remain in full force and effect at all times during and after my employment with Washington Mutual, or any successor in interest to Washington Mutual.

| Employee ID: 2 4 6 0 9 2 | Last four of SSN: 8 8 6 4 | |
|---|---|---|
| Printed name Kellie O'Hanlon | Employee signature Kellie O'Hanlon | Date 5/07/07 |

Send the completed form to HR Service Center at mail stop SAS0921

# EXHIBIT C

**Fw: O'HANLON v. JPMorgan Chase Bank, N.A. -- Federal and State Court Actions** Monday, September 7, 2015 4:44 PM

**From:** "Kellie OHanlon" <kellie_ohanlon@yahoo.com>

**To:** "Kellie M. O'Hanlon" <kellie_ohanlon@yahoo.com>

print 3

On Tuesday, September 1, 2015 11:04 PM, Kellie OHanlon <kellie_ohanlon@yahoo.com> wrote:

Ms. Flores and Ms. Taylor,
At this time I do not agree to any form of an extension or continuance. I am, however, free any time to "Meet and Confer" regarding the case.

Additionally, I mailed to you today a copy of the Request for Interrogatories, Request for Admissions, and Request for Document Production, as well as Proof of Service for all items, that was served to JP Morgan Chase on 08/14/15. According to my calculation a response is due by 09/15/15. Please let me know once you receive or if you were already in possession of these items.

Let me know when you are free to schedule our meeting. Thanks!

On Tuesday, September 1, 2015 10:09 PM, "Taylor, Brett" <BTaylor@cozen.com> wrote:

Hello Kellie,

If you agreeable to the extension, I have attached a stipulation for your review and execution. Please contact me if you have any questions.

Thank you,

COZEN
O'CONNOR

**Brett N. Taylor**
**Associate | Cozen O'Connor**
601 S. Figueroa Street, Suite 3700| Los Angeles, CA 90017
P: 213-892-7925
Email | Bio | Map | cozen.com

**From:** Flores, Michelle Lee
**Sent:** Tuesday, September 1, 2015 4:28 PMe-
**To:** Kellie OHanlon
**Cc:** Taylor, Brett; Maritz, Maxine
**Subject:** RE: O'HANLON v. JPMorgan Chase Bank, N.A. -- Federal and State Court Actions
**Importance:** High

Hello Kellie –

Thank you for your e-mail and I'm happy to provide you with electronic copies until your registration is confirmed. In addition, I appreciate the follow up on our meet and confer and your kind and professional letter. I have unfortunately been occupied on another matter and this is my first opportunity to respond.

Yes, absolutely, I would like to continue to meet and confer and determine if we can resolve our differences and avoid a motion for the court. To this end, I trust you would be amenable to a short continuance to respond to the complaint in federal court (similar to what you agreed in state court but that which we ended up not using). As you may know, our response to your complaint is due this Friday, September 4, 2015. Local Rule 8-3 allows for a stipulation between the parties to extend this response time by a maximum of 30 days. We are requesting that we agree that JPMorgan Chase Bank have***up to and including September 30, 2015*** to respond to the complaint. This extension will give us adequate time to meet and confer and then, if necessary, time to prepare and file a motion to compel.

I've copied my colleague and fellow lawyer Brett Nicole Taylor on this e-mail. Please kindly reply all with your response. If you are agreeable to the stipulation, Brett can send you the stipulation to execute and we will then file it with the court.

Thank you in advance for your continued professionalism,
Michelle

**Michelle Lee Flores**
**Member | Cozen O'Connor**
601 S. Figueroa Street, Suite 3700| Los Angeles, CA 90017
P: 213-892-7938 F: 213-784-9069
Email |Bio |Map | cozen.com

**From:** Kellie OHanlon [mailto:kellie_ohanlon@yahoo.com]
**Sent:** Monday, August 31, 2015 7:03 PM
**To:** Flores, Michelle Lee
**Subject:** Re: O'HANLON v. JPMorgan Chase Bank, N.A. -- Federal and State Court Actions

Ms. Flores,
I have applied for the CM/ECF online filing system and it's pending approval. I appreciate you forwarding all attachments to me in the interim. I will let you know once the access is approved. Did you still want to meet this week to "Meet and Confer"?

Thanks!

On Monday, August 31, 2015 6:03 PM, "Flores, Michelle Lee" <MFlores@cozen.com> wrote:

Dear Ms. Hanlon –

Attached are courtesy copies of items my office filed with the respective courts and served on you via First Class Mail today.

Since you are a*pro per* Plaintiff, you will need to register with the District Court's on-line CM/ECF (Case Management/Electronic Case Filing) system in order to get service by the court of all filings and notices in the Federal Court action. As for the State Court, we will provide services as that court governs.

Thank you,
Michelle

**Michelle Lee Flores**
**Member | Cozen O'Connor**
601 S. Figueroa Street, Suite 3700| Los Angeles, CA 90017
P: 213-892-7938 F: 213-784-9069
Email |Bio |Map |cozen.com

***Notice:** This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If the reader or recipient of this communication is not the intended recipient, an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient, or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.*

***Notice:** This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient (s). If the reader or recipient of this communication is not the intended recipient, an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient, or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.*

**Fw: OHANLON - Continued Meet and Confer Letter - Response Requested**

Monday, September 7, 2015 4:45 PM

From: "Kellie OHanlon" <kellie_ohanlon@yahoo.com>

To: "Kellie M. O'Hanlon" <kellie_ohanlon@yahoo.com>

1 Files 1 MB Download All

PDF 1 MB
Meet and Confer Response.
Save

print 3

On Sunday, August 30, 2015 5:19 PM, Kellie OHanlon <kellie_ohanlon@yahoo.com> wrote:

Dear Ms. Flores,
Please see the attached correspondence in response to your Meet and Confer Letter.
Please contact me to set up the date and time for a meeting. Thanks!

On Friday, August 28, 2015 6:30 PM, "Flores, Michelle Lee" <MFlores@cozen.com> wrote:

Dear Ms. O'Hanlon –

Please see attached letter of today's date. Please contact me once you have reviewed it to determine if we can resolve the need to file the motion discussed therein.

Thank you,
Michelle

COZEN
O'CONNOR

**Michelle Lee Flores**
**Member | Cozen O'Connor**
601 S. Figueroa Street, Suite 3700| Los Angeles, CA 90017
P: 213-892-7938 F: 213-784-9069
Email | Bio | Map | cozen.com

***Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient (s). If the reader or recipient of this communication is not the intended recipient, an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient, or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.***

Thank you for your e-mail and I'm happy to provide you with electronic copies until your registration is confirmed. In addition, I appreciate the follow up on our meet and confer and your kind and professional letter. I have unfortunately been occupied on another matter and this is my first opportunity to respond.

Yes, absolutely, I would like to continue to meet and confer and determine if we can resolve our differences and avoid a motion for the court. To this end, I trust you would be amenable to a short continuance to respond to the complaint in federal court (similar to what you agreed in state court but that which we ended up not using). As you may know, our response to your complaint is due this Friday, September 4, 2015. Local Rule 8-3 allows for a stipulation between the parties to extend this response time by a maximum of 30 days. We are requesting that we agree that JPMorgan Chase Bank have ***up to and including September 30, 2015*** to respond to the complaint. This extension will give us adequate time to meet and confer and then, if necessary, time to prepare and file a motion to compel.

I've copied my colleague and fellow lawyer Brett Nicole Taylor on this e-mail. Please kindly reply all with your response. If you are agreeable to the stipulation, Brett can send you the stipulation to execute and we will then file it with the court.

Thank you in advance for your continued professionalism,
Michelle

COZEN
O'CONNOR

**Michelle Lee Flores**
**Member | Cozen O'Connor**
601 S. Figueroa Street, Suite 3700| Los Angeles, CA 90017
P: 213-892-7938 F: 213-784-9069
Email |Bio |Map | cozen.com

**From:** Kellie OHanlon [mailto:kellie_ohanlon@yahoo.com]
**Sent:** Monday, August 31, 2015 7:03 PM
**To:** Flores, Michelle Lee
**Subject:** Re: O'HANLON v. JPMorgan Chase Bank, N.A. -- Federal and State Court Actions

Ms. Flores,
I have applied for the CM/ECF online filing system and it's pending approval. I
appreciate you forwarding all attachments to me in the interim. I will let you know once the
access is approved. Did you still want to meet this week to "Meet and Confer"?

Thanks!

On Monday, August 31, 2015 6:03 PM, "Flores, Michelle Lee" <MFlores@cozen.com> wrote:

Dear Ms. Hanlon –

Attached are courtesy copies of items my office filed with the respective courts and served on you via First Class Mail today.

Since you are a *pro per* Plaintiff, you will need to register with the District Court's on-line CM/ECF (Case Management/Electronic Case Filing) system in order to get service by the court of all filings and notices in the Federal Court action. As for the State Court, we will provide services as that court governs.

Thank you,
Michelle

COZEN O'CONNOR

**Michelle Lee Flores**
**Member | Cozen O'Connor**

# EXHIBIT D

**Flores, Michelle Lee**

**From:** Flores, Michelle Lee
**Sent:** Thursday, September 3, 2015 2:06 PM
**To:** 'Kellie OHanlon'
**Cc:** Taylor, Brett; Maritz, Maxine
**Subject:** RE: O'HANLON v. JPMorgan Chase Bank, N.A. -- Federal and State Court Actions

**Importance:** High

Ms. O'Hanlon –

Since you refused the professional courtesy of a brief extension to have the luxury of more time to discuss the enforceability issues of your agreement to arbitrate your claims, my continued meet and confer below is, unfortunately, brief and to the point. The following addresses the enforceability of the Binding Arbitration Agreement and addresses your assertions in your recent meet and confer letter.

You freely and with ample notice agreed to arbitrate the employment disputes contained in your complaint ("Claims"). You agreed with Washington Mutual ("WaMu") directly to arbitrate your Claims. You agreed to arbitrate your Claims with any successor in interest to WaMu. JPMorgan Chase Bank ("Chase Bank") is a successor in interest to WaMu. Your complaint even admits this fact since you indicate that "From May 2007" you were employed by Chase Bank.

On March 28, 2007 you executed an employment application wherein you expressly acknowledged that as a condition of accepting any offer of employment, you would sign a binding arbitration agreement. On May 4, 2007 you executed an offer letter for employment (dated April 26, 2007) and expressly acknowledged that you understood that the offer of employment was contingent upon various conditions, including your execution of WaMu's Binding Arbitration Agreement, a copy of which was enclosure for your review and records. The letter also indicated that an original Binding Arbitration Agreement would be provided to you on your first day of employment to review and sign.

On May 4, 2007 you executed the WaMu Binding Arbitration Agreement. On your first day of employment, May 7, 2007 you executed the WaMu Binding Arbitration Agreement AGAIN, thereby affirming twice your agreement to arbitrate your Claims. (See Binding Arbitration Agreement I sent you last week.)

The above realities illustrate that your situation is completely distinguishable from Dixie Jara, the lawsuit you reference as to why you continue to refuse to arbitrate your claims. For example, Jara did not have any advance notice of the arbitration agreement when she executed it on the first day of employment. In addition, the application for employment that Dixie Jara did execute was done approximately a month *after* she began working for WaMu. Again, facts very different from your reality.

There are numerous cases involving this same agreement and other similarly situated employees wherein the court in those cases found that the agreement was enforceable. Frankly, Jara is an aberration, and again, distinguishable from the realities and facts of your notice and agreement to arbitrate your Claims.

The Binding Arbitration Agreement, actually Agreements, you signed are neither procedurally nor substantively unconscionable. There was no surprise to you of the terms of the agreement or your agreement to arbitrate your Claims.

In addition, injunctive relief is provided for all parties before or during arbitration. See Paragraph 4 of Binding Arbitration Agreement ("either party can request the court . . ."). The Binding Arbitration Agreement provides for adequate discovery. Further, discovery limitations are at the discretion of the arbitrator and both parties may seek additional discovery if necessary. See Paragraph 9. With regard to arbitration costs, the Binding Arbitration Agreement provides that Defendant will reimburse arbitration filing fees to the extent the costs exceed court filing fees. See Paragraph 13. The Binding Arbitration Agreement ON ITS FACE follows *Armendariz* by allocating costs beyond that which the employee would have incurred to the employer. Furthermore, not having a signature for the employer does not render the agreement unenforceable. Similarly, not providing you with a copy of the rules in 2007 does not render it unenforceable.

If you would like to further meet and confer on this subject, please let me know. If you agree to a brief continuance of our deadline to file the motion to compel – which you know is tomorrow, Friday, September 4, 2015 –we can discuss it in whatever detail you would like. Without an agreement to a brief continuance, we are limited in time as we are preparing our papers to file.

***If after reviewing this correspondence you <u>will agree</u> to proceed in arbitration, please advise so <u>immediately</u>.***

Thank you,
Michelle

**Michelle Lee Flores**
**Member | Cozen O'Connor**
601 S. Figueroa Street, Suite 3700 | Los Angeles, CA 90017
P: 213-892-7938 F: 213-784-9069
Email | Bio | Map | cozen.com

**From:** Kellie OHanlon [mailto:kellie_ohanlon@yahoo.com]
**Sent:** Tuesday, September 1, 2015 11:05 PM
**To:** Taylor, Brett; Flores, Michelle Lee
**Subject:** Re: O'HANLON v. JPMorgan Chase Bank, N.A. -- Federal and State Court Actions

Ms. Flores and Ms. Taylor,
At this time I do not agree to any form of an extension or continuance. I am, however, free any time to
"Meet and Confer" regarding the case.

Additionally, I mailed to you today a copy of the Request for Interrogatories, Request for Admissions, and Request for Document Production, as well as Proof of Service for all items, that was served to JP Morgan Chase on 08/14/15. According to my calculation a response is due by 09/15/15. Please let me know once you receive or if you were already in possession of these items.