O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KELLIE M. O'HANLON, | ) | Case No. CV 15-06640 DDP (PJWx) |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION** |
| | ) | |
| v. | ) | |
| | ) | [Dkt. No. 8] |
| JPMORGAN CHASE BANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

Presently before the Court is Defendant JPMorgan Chase Bank, N.A.'s Motion to Compel Arbitration and Dismiss or Stay Action. Having heard oral argument and considered the parties' submissions, the Court adopts the following order.

**I.   BACKGROUND**

Plaintiff Kellie M. O'Hanlon, appearing *in pro per*, was hired by Washington Mutual in May 2007 as a Default Customer Care Section Manager. (Compl.; Def. Mot. Compel Arbitration at 2.) To apply for the job, Plaintiff had to sign a form that included an acknowledgment of Washington Mutual's arbitration policy. The acknowledgment stated:

///

> If I accept an offer of employment with Washington Mutual, I agree to abide by its policies and procedures and to resolve all disputes relating to my employment through Washington Mutual's Dispute Resolution Process, which includes binding arbitration. As a condition of accepting any offer of employment, I will sign a *Binding Arbitration Agreement*. Upon request, Washington Mutual will provide me with a copy of the policy and the Agreement before I sign this application or the agreement.

(Decl. Of Sharon Young ISO Def. Mot. Compel Arbitration ("Young Decl.") Ex. A.)

When hired, Plaintiff received an offer letter that included a note that Plaintiff's employment was "contingent" on her "agreement to resolve eligible job related concerns through Washington Mutual's Dispute Resolution Process (DRP)." (Id. Ex. B.) It further stated that Plaintiff would receive an "original binding Arbitration Agreement for signature on [her] first day of work." (Id.)

Plaintiff appears to have signed a Binding Arbitration Agreement ("arbitration agreement" or "agreement") on the day she received and returned the offer letter. (Id. Ex. C.) She also signed the agreement on her first day of work a few days later. (Id. Ex. D.) Plaintiff "does not recall a copy" of the agreement "being included in the job offer letter," but Plaintiff's signature is on the agreement. (See Pl. Opp'n to Mot. Compel Arbitration ("Pl. Opp'n") at 2.) Plaintiff states that she was given numerous papers to sign on her first day of work, including the agreement. (Id.)

Defendant JP Morgan Chase acquired Washington Mutual in 2008, and Plaintiff's employment was transferred to Defendant at that time. (Compl.; Def. Mot. Compel Arbitration at 4; Pl. Opp'n at 2.) Plaintiff remained employed with Defendant until August 2014, when

Plaintiff alleges she was wrongfully terminated for contesting her credit card statement with Defendant. (Compl.) Defendant has requested that Plaintiff arbitrate this dispute per the arbitration agreement. Plaintiff has resisted, arguing that the agreement is not enforceable.

**II.  LEGAL STANDARD**

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., a written agreement requiring controversies between the contracting parties to be settled by arbitration is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A party to an arbitration agreement may petition a district court with jurisdiction over the dispute for an order directing that arbitration proceed as provided for in the agreement. Id. § 4.

The FAA reflects a "liberal federal policy favoring arbitration agreements" and creates a "body of federal substantive law of arbitrability." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). The FAA therefore preempts state laws that "stand as an obstacle to the accomplishment of the FAA's objectives." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 131 S. Ct. 1740, 1748 (2011). This includes "defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue," as well as state rules that act to fundamentally change the nature of the arbitration agreed to by the parties. Id. at 1746, 1750.

///
///
///

**III. DISCUSSION**

    **A.    Applicability of Washington Mutual's Arbitration Agreement to Defendant JPMorgan**

Plaintiff argues that Defendant cannot enforce the arbitration agreement because Plaintiff entered into the agreement with her previous employer, Washington Mutual. (Pl. Opp'n at 10.) Defendant argues that the arbitration agreement states that it will apply to successors in interest to Washington Mutual, which is what Defendant is. (Def. Mot. Compel Arbitration at 8-9; Def. Reply at 2.)

The arbitration agreement states: "This Agreement shall remain in full force and effect at all times during and after my employment with Washington Mutual, or any successor in interest to Washington Mutual." (Young Decl. Ex. D § 21.) Further, nonsignatories to a contract may enforce the contract if they are intended third-party beneficiaries of the contract, or are agents or alter egos of a signatory. See Bouton v. USAA Cas. Ins. Co., 167 Cal. App. 4th 412, 424 (2008). Under the plain terms of the agreement and under standard contract law, Defendants can enforce the agreement against Plaintiff, if the agreement is valid.

    **B.    Unconscionability**

The FAA as well as federal and California case law recognize the standard contract defense of unconscionability is applicable to arbitration agreements. See 9 U.S.C. § 2 (where "savings clause" states that arbitration agreements are to be enforced according to their terms "save upon such grounds as exist at law or in equity for the revocation of any contract"); Chavarria v. Ralphs Grocery Co., 733 F.3d 916, 921 (9th Cir. 2013); Armendariz v. Found. Health

4

1 Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (2000). Plaintiff here
2 alleges that the arbitration agreement is unconscionable and thus
3 unenforceable. (Pl. Opp'n at 7-11.)
4     In California, unconscionability has two elements: procedural
5 unconscionability and substantive unconscionability. Armendariz,
6 24 Cal. 4th at 114. Both elements must be present for a contract
7 to be unconscionable, but the elements need not be present to the
8 same degree — there is a sliding scale between the two where more
9 of one can make up for less of the other. Id.

       **1. Procedural Unconscionability**

11     Plaintiff argues that the arbitration agreement is
12 procedurally unconscionable "because it was presented on a take it
13 or leave it basis and did not include a copy of the arbitration
14 rules," citing to Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1282
15 (9th Cir. 2006); Ingle v. Circuit City Stores, Inc., 328 F.3d 1165,
16 1172 (9th Cir. 2003); Ferguson v. Countrywide Credit Indus., Inc.,
17 298 F.3d 778, 783-84 (9th Cir. 2002); and Abeyrama v. J.P. Morgan
18 Chase Bank, No. CV 12-00445 DMG (MRWx), 2012 WL 2393063 (C.D. Cal.
19 June 22, 2012). (Pl. Opp'n at 8-10.) Plaintiff also points out
20 that the agreement was adhesive, imposed as a condition of
21 employment, and lacked opportunity for negotiation. (Id.)
22     Defendant argues that the agreement is not unenforceable
23 "merely because it is imposed as a condition of employment." (Def.
24 Mot. Compel Arbitration at 16.) Defendant also argues that
25 Plaintiff had "the opportunity to consider other reasonable
26 employment options, if any, prior to agreeing to the terms of any
27 specific employer." (Id.) Defendant concludes saying there was no
28

5

evidence Plaintiff was oppressed or surprised by the agreement. (Id. at 16-17; see also Def. Reply at 4-7.)

The Ninth Circuit has explained the standard for California's procedural unconscionability, stating:

> Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement. Ferguson v. Countrywide Credit Indus., Inc., 298 F.3d 778, 783 (9th Cir. 2002); A & M Produce Co. v. FMC Corp., 135 Cal. App.3d 473, 186 Cal. Rptr. 114, 121-22 (1982). Oppression addresses the weaker party's absence of choice and unequal bargaining power that results in 'no real negotiation.' A & M Produce, 186 Cal. Rptr. at 122. Surprise involves the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party. Parada v. Super. Ct., 176 Cal. App. 4th 1554, 98 Cal. Rptr.3d 743, 757 (2009).

Chavarria, 733 F.3d at 922. In Chavarria, the court found an employment arbitration agreement procedurally unconscionable because it was an adhesive take-it-or-leave-it requirement of continued employment. Id. at 923.

Here, the arbitration agreement was a standard, adhesive agreement that was presented to Plaintiff as a condition of employment. Defendant's argument that Plaintiff could have either taken the job or found a different job is a false choice, not the kind of non-oppressive, "meaningful" choice that the case law requires. See Ingle, 328 F.3d at 1172-72. That kind of meaningful choice is a choice to negotiate terms or even the existence of an arbitration agreement, not whether to be employed. See id. Therefore, the agreement is procedurally unconscionable.

**2. Substantive Unconscionability**

"A contract is substantively unconscionable when it is unjustifiably one-sided to such an extent that it 'shocks the

6

conscience.'" Chavarria, 733 F.3d at 923 (quoting Parada v. Superior Court, 176 Cal. App. 4th 1554 (2009)).

Plaintiff argues several grounds for substantive unconscionability in the arbitration agreement, the most significant of which are discussed below.

### a. Injunctive Claim Carve Out

Plaintiff argues that the agreement lacks "mutuality because it excludes claims for injunctive relief favored by employers." (Pl. Opp'n at 7.) Defendant acknowledges that "both sides are required, with narrow exceptions, to submit their claims to binding arbitration." (Def. Mot. Compel Arbitration at 17.) But Defendant maintains that the agreement is not lacking mutuality, although Defendant does not directly respond to Plaintiff's argument in its Reply. (Id. at 17-18; Def. Reply at 2-4.) The agreement provides:

> 2. Washington Mutual and I understand that by entering into this Agreement, each of us is waiving any right we may have to file a lawsuit or other civil action or proceeding relating to my employment with Washington Mutual, and waiving any right we may have to resolve employment disputes through trial by jury. We agree that arbitration shall be in lieu of any and all lawsuits or other civil legal proceedings relating to my employment.
>
> 3. This Agreement is intended to cover all civil claims that involve or relate in any way to my employment (or termination of employment) with Washington Mutual, including, but not limited to, claims of employment discrimination or harassment on the basis of race, sex, age, religion, color, national origin, sexual orientation, disability and veteran status . . ., claims for breach of any contract or covenant, tort claims, claims based on violation of public policy or statute, and claims against individuals or entities employed by, acting on behalf of, or affiliated with Washington Mutual. The only exceptions to this are
>    Claims for benefits under a plan that is governed by ERISA,
>    Claims for unemployment and workers compensation benefits,

        Claims for injunctive relief to enforce rights to trade secrets, or agreements not to compete or solicit customers or employees.

(Young Decl. Ex. D §§ 2-3.)

"[A]n arbitration agreement 'lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences.'" Mercuro v. Superior Court, 96 Cal. App. 4th 167, 176-77 (2002). In Mercuro, the employer carved out from arbitration certain injunctive relief claims regarding trade secrets and unfair competition, and the court found this unconscionable. Id. at 177-78. The problem was that an employee fired for unauthorized disclosures, for example, would be forced to arbitrate the employment dispute, but the employer could go to court for injunctive relief against the employee. Id. at 176. Many California cases hold that contractual provisions allowing a court to hear certain injunctive relief claims, such as those regarding covenants not to compete and intellectual property, are designed to favor the employer and are substantively unconscionable. See, e.g., Jara v. JPMorgan Chase Bank, N.A., 2d Civil No. B234089, 2012 WL 3065307, *3 (July 30, 2012) (unpublished); Trivedi v. Curexo Tech. Corp., 189 Cal. App. 4th 387, 397 (2010); Fitz v. NCR Corp., 118 Cal. App. 4th 702, 724-26 (2004); Mercuro, 96 Cal. App. 4th at 176-77.

    The weight of authority provides that the carve out here would be found unconscionable in California courts. Defendant's citation to Pirro v. Washington Mutual Bank, No. CV 10-04162 ODW (JC), 2010 WL 3749597, *3-4 (C.D. Cal. Sept. 23, 2010), is unavailing because in this circumstance, state law governs. The

8

agreement here provides for certain claims to be exempted from the arbitration requirement, but the exemption is designed to protect an employer's access to court for intellectual property protection. There is no countervailing protection for employees, even if an employee could theoretically utilize the same provision, because an employee's dispute regarding the same facts would be an employment dispute subject to arbitration. Because the provision is unfairly one-sided in application, the provision is substantively unconscionable.

### b.  Costs

Plaintiff argues that the arbitration agreement imposes costs on her that are higher than she would face in arbitration because the contract only requires the employer to "advance" the costs of arbitration. (Pl. Opp'n at 8.) Defendant argues that the agreement only requires an employee to pay a filing fee, just like in court, and that any cost-splitting would be controlled by the American Arbitration Association ("AAA") rules that are incorporated into the agreement by reference. (Def. Mot. Compel Arbitration at 13-14; Def. Reply at 3.) The agreement states:

> 12. Each party, at its own expense, has the right to hire an attorney to represent it in the arbitration. . . . Each party shall pay the fees of any witnesses testifying at its request, and pay the cost of any stenographic record of the arbitration hearing should it request such a record.
>
> 13. Any filing fee will be paid by the party initiating arbitration. To the extent such a fee exceeds the cost of filing a lawsuit in a court of that jurisdiction, Washington Mutual will reimburse the difference. Any postponement or cancellation fee imposed by the arbitration service will be paid by the party requesting the postponement or cancellation. During the time the arbitration proceedings are ongoing, Washington Mutual will advance any required administrative or arbitrator's fees. Each party will pay its own witness fees.

>       14. . . . The decision and award, if any, shall be consistent with the terms of this Agreement and shall include an allocation of the costs of the arbitration proceeding between the parties.

(Young Decl. Ex. D §§ 12-14.)

In Chavarria, the arbitration agreement split arbitrator fees equally, adding up to amounts of around $3,500 to $7,000 per day in arbitration fees being put on the employee, and the Ninth Circuit held this unconscionable. 733 F.3d at 925-26. These kind of fees would prevent an employee from effectively vindicating their rights by making arbitration cost prohibitive. See id. Further, in Ingle, the court found unconscionable a $75 filing fee because there was no provision for a finding of indigence to excuse the fee for those unable to bear it. Ingle, 328 F.3d at 1177.

Here, an employee initiating arbitration pays a filing fee as determined by the AAA, capped by the amount a lawsuit costs in the relevant jurisdiction. Alone, this is not unconscionable (although there is no provision for indigent employees, with only a reference to indigent consumers in the AAA rules), but there is a problem with the allocation of costs and attorneys' fees. Initially, it seems problematic to have explicit language in the arbitration agreement providing for merely an "advance" of fees by the employer and a demand that the arbitrator "shall include an allocation of the costs of the arbitration proceeding between the parties."

Defendant argues that this contractual language must be understood through the AAA rules that state: "Arbitrat[or] compensation, expenses [as defined in section (iv) below], and administrative fees are not subject to reallocation by the arbitrator(s) except upon the arbitrator's determination that a

claim or counterclaim was filed for purposes of harassment or is patently frivolous." (Def. Mot. Compel Arbitration at 14 (citing Ex. J ("AAA Rules at Section R-48 at page 33")).) However, looking at the potential expenses in the AAA rules, section (iv) only provides for "hearing room rental," and other fees include: (ii) hearing fees; (iii) postponement/cancellation fees; (v) abeyance fee; and (vi) expenses (which does provide that the costs in that section "shall be borne by the employer," although it is not clear if that is subject to the provision providing for allocation above). (Decl. Of Michelle Lee Flores, Esq. ISO Def. Mot. Compel Arbitration Ex. J (AAA Rules) at 33-35.) This means that the AAA rules do *not* provide that only the employer pays the full costs of arbitration.

Additionally, the arbitration agreement here is not clear that it has incorporated the AAA rules — or which version of the AAA rules — as it states:

> 7. . . . The arbitration shall be conducted in accordance with the laws of the state in which the arbitration is conducted and the rules and requirements of the arbitration service being utilized, to the extent that such rules and requirements do not conflict with the terms of this Agreement.

(Young Decl. Ex. D § 7.) The plain language of section 7 does not fully incorporate AAA rules and it also provides that to the extent the rules are incorporated, the rules' provisions are subject to the express provisions in the contract, such as the allocation of costs in section 14 of the agreement.

Further, the agreement's provisions do not allow for costs of litigation — like discovery costs — to be awarded to prevailing plaintiffs after the end of the arbitration. In <u>Chavarria</u>, the

11

court specifically set out that this kind of cost-shifting needed to be accounted for in arbitration agreements. 733 F.3d at 925 ("There is no justification to ignore a state cost-shifting provision, except to impose upon the employee a potentially prohibitive obstacle to having her claim heard."). There is also no provision for awarding attorneys' fees to a prevailing employee as would be done under several civil rights statutes. Therefore, the costs and fees provisions in the arbitration agreement are substantively unconscionable.

### c. Discovery

Plaintiff argues that the limited discovery provision in the contract is unconscionable and prevents effective vindication of her rights. (See Pl. Opp'n at 10-11.) Defendant argues that limited discovery is the hallmark of arbitration and that Plaintiff has access to needed discovery as well as the option to request more discovery at the arbitrator's discretion. (Def. Mot. Compel Arbitration at 12-13; Def. Reply at 3-4.) The agreement states:

> 9. Either party shall be entitled to a limited amount of discovery prior to the arbitration hearing. Either party may make a request for production of documents from the other party. Either party may take a maximum of two (2) depositions. Either party may apply to the arbitrator for further discovery or to limit discovery. The arbitration has the discretion to enter an appropriate order upon a showing of sufficient cause. . . .
>
> 10. During the arbitration process, Washington Mutual and I may each make a written demand on the other for a list of witnesses, including experts, to be called and/or copies of documents to be introduced at the hearing. . . .

(Young Decl. Ex. D §§ 9-10.)

In Armendariz, the California Supreme Court adopted the Cole factors for employment arbitration of statutory rights. Armendariz, 24 Cal. 4th at 102 (referring to Cole v. Burns Int'l

12

Sec. Servs., 105 F.3d 1465, 1482 (D.C. Cir. 1997)). One such factor is that the arbitration agreement must provide "for more than minimal discovery." Id.

In Armendariz, the court found that the arbitration agreement at issue there did provide for adequate discovery. Id. at 104-06. There, the agreement incorporated the California rules governing procedures for arbitration. Id. at 105. Further, the court found that parties "are also permitted to agree to something *less than* the full panoply of discovery provided" in court cases but that parties also "implicitly agree . . . to such procedures as are necessary" to vindicate a statutory claim, such as "access to essential documents and witnesses, as determined by the arbitrator(s)." Id. at 105-06. Applying this rule, other California courts have held arbitration provisions allowing for two depositions, document discovery, and arbitrator discretion are substantively unconscionable. See Jara, 2d Civil No. B234089, 2012 WL 3065307, *3; Fitz, 118 Cal. App. 4th at 715-19.

Here, there is a provision for limited discovery, but as Plaintiff argues, it is too limited. Leaving discovery at the arbitrator's discretion — without any indication of what kind of law or rules the arbitrator will apply to limit that discretion — does not protect the employee's entitlement to sufficient discovery for effective vindication of statutory rights. The scope of the discovery provision here is the same as the scope of the discovery provisions that were previously found unconscionable by California courts. Further, Plaintiff must meet a higher standard here than in court in order to receive her needed discovery ("sufficient cause"), which adds an additional burden as well as ambiguity into

13

the contract, all leading to a more expensive and lengthier process. Thus here, the Court finds the discovery provision is also substantively unconscionable.

### 3. Sliding Scale of Unconscionability

Both procedural and substantive unconscionability are present here. Most significant for substantive unconscionability are the grounds discussed above: the carve out for certain kinds of injunctive relief, the costs and fees provisions, and the discovery provisions. The agreement is also procedurally unconscionable. Therefore, the contract is unconscionable and unenforceable.

The Court declines Defendant's suggestion to sever any unconscionable portions of the contract because the unconscionability is pervasive and fundamental to the whole agreement, making it impossible to sever the unconscionable parts without re-writing the parties' agreement.

**IV. CONCLUSION**

For all the reasons stated above, the Court DENIES Defendant's Motion to Compel Arbitration and Dismiss or Stay Claims.

IT IS SO ORDERED.

Dated: October 7, 2015

HON. DEAN D. PREGERSON
United States District Judge

14